Good morning, your honors. May it please the court. My name is Bobby Guijar and I will be arguing on behalf of appellants. I'd like to reserve three minutes for rebuttal. The district court erred in granting summary judgment in favor of a party that knowingly used an identical copy of Falls Media's federally registered trademark on identical products. There's no precedent for summary judgment on this record below. There were hotly disputed factual issues, and Falls Media, a non-moving party, and importantly, the owner of a federally registered trademark, was entitled to the benefit in all inferences and to the measure of deference to the PTO's finding that its trademark was valid. In addition, at critical points in its analysis, first on distinctiveness and then in measuring secondary meaning, the district court employed incorrect legal standards and weighed the evidence in a light most favorable to Zobmondo, not to Falls Media. I'd like to start off by talking about the distinctive portion of the inquiry. This court's yellow-cap company decision instructs that the determination of distinctiveness is a question of fact and that there's a fine line between descriptive marks, which merely describe a product and are inherently unprotectable absent a showing of secondary meaning, and suggestive marks, which suggest a quality but don't directly describe them and do not require secondary meaning. Taking the determination out of the hands of a jury, the district court ruled against Falls Media where there were evidentiary disputes between deposition and expert witness testimony with regards to the weight accorded to the USPTO's registration and multiple examination of Falls Media's mark, the weight given to Zobmondo's alleged evidence of third-party use, and both legal error and evidentiary disputes in the district court's application of the needs and extent of use tests used to determine whether a mark is descriptive or suggestive. Isn't would you rather, though, sort of the central feature of the game? I hadn't actually heard of would you rather being a game, but when I asked my daughter, she's like, oh yes, that's the game where you ask these questions. So it seemed like such a central element of the game, which is what the district court held when it was saying it was descriptive. Indeed it did. Our position, Your Honor, is that would you rather, with the ellipses and the question mark, is a question without any meaning. It's suggestive of a board game or a book of humorous and undesirable choices, but does not nearly describe a board game or a book. The word rather in the phrase would you rather suggests a desirable choice, one of willing preference. The game play in both parties' products demonstrates that that's hardly the case. A suggestive mark uses only some imagination or multistage reasoning between the mark and the products to figure out what it is. It doesn't need to be much. The threshold is very low. And, for example, this court in a recent decision acknowledged the Second Circuit's decision finding wet ones was suggestive of pre-moistened towelettes. That name suggests an attribute of the product. On the other hand, a descriptive mark requires no imagination whatsoever. Honey-baked ham is an example in precedent. It's literally and immediately descriptive of ham baked with honey. There are many other examples that are easy calls. What the district court did here and what we take issue with is the court tried to extrapolate from precedent. And in the cases from this circuit and other circuits, finding that a mark is descriptive and tried to put would you rather with the dot, dot, dot question mark somewhere along that continuum. This court cautioned in the AMF sleek craft case, excuse me, that extrapolating from precedent is impossible. But that's exactly what the district court did. With regard to the deference given to the PTO, we realize that that is simply a presumption in Falls Media's favor. But here the facts are somewhat unique. This court has recognized that deference to the USPTO's classifications decision is sensible because the PTO has special expertise that we lack on this fact-intensive issue. That notion holds true here given the number of times Falls Media's various applications for would you rather with the ellipses and question mark were examined. The PTO is not supposed to register marks that are descriptive without showing a secondary meaning. And here, three different examining attorneys at the PTO examined Falls Media's applications on five total occasions and never once raised an issue of descriptiveness. They approved the mark and ratified the fact that it is a distinctive mark. Now, the USPTO's five-time examination is probative of how experts in the trademark field divide this fine line between suggestive and descriptive marks. It's one of several pieces of evidence that the district court should have weighed in Falls Media's favor. Another piece of evidence we believe the district court should have weighed in Falls Media's favor on summary judgment is Zabmondo's, the other side's, pre-litigation admissions and its own conduct in trying to claim would you rather as its trademark. Zabmondo, before it found itself in a defensive posture here, tried to apply for the same mark at the PTO but it was second in time and its mark was rejected based on its rights. Never once did it allege, even when it opposed Falls Media's mark, that the mark is descriptive. Its position all along was this mark is valid and it's distinctive. And the court should have credited this flip-flopping, if you will, in Falls Media's favor but didn't do that. But can't that same argument be made against you when your own literary agent says the mark is utterly obvious title and a clear explanation of the content of these products? Your Honor, that is one piece of evidence that the court weighed against us and in contrast there are a number of other pieces of evidence that weighed in favor of a finding that the mark is not descriptive. The literary agent's opinion was in the context of a deposition and he does not represent the way the public would view the trademark and nor is he in the same shoes as Zabmondo's owner making the admission that the mark is, at the time of applying for the trademark, that the mark was distinctive. So I think that they're distinguishable in that regard. But all I'm trying to say is it doesn't seem to me that their opposition or their application or their wanting to get this is any more, if you will, contrary to the argument they would make here other than what your own literary agent would suggest as well. If I go what your people are saying, it seems to me there's descriptive mark. Well, that's only one literary agent's opinion and in the context of deposition. There are other opinions from others including the principles in the case and again we point to Zabmondo's pre-litigation conduct. And now we're weighing evidence and we have the literary agent's opinion on the one hand and you have an expert opinion, Philip Orbanios' opinion, that in his 30-some years experience in the game market, he's never encountered a board game or a book with would you rather. He's unaware of a predefined concept that is articulate in the way that the parties have done so here. So there's this mixed record of testimony including Falls Media's expert opinion which the court wholly disregarded but should not have under this court's click billiards precedent. You had Zabmondo's agent's workman publishing who said we don't want to use this mark. We think that odious options is a better option. We have the fact that Hasbro released Zabmondo's game under another title altogether, Zabmondo, and didn't need to use would you rather. And in weighing the various tests used to determine distinctiveness, the court placed a lot of emphasis on the imagination test which is the primary test but acknowledged that the needs test which is critical here is difficult to apply. Well, the needs test is really the inverse of the imagination test. And here there was no evidence that the parties or anybody else needed to use the would you rather mark. We make the point in the briefs that Zabmondo simply wanted to use the mark. The evidence on record showed that Falls Media was the first and only registrant of this mark. There were no other applications or registrations for would you rather with the ellipses and question mark. These are the only two parties making competitive games under the would you rather title and trademark. There is no evidence that competitors need this mark, and the court acknowledges much but simply didn't weigh that and should have. It should have weighed it in Falls Media's favor and simply disregarded it. There's another test. There's the extent of use test. Getting back to the needs test for a moment, the opposing counsel makes the argument that just because you can come up with another name doesn't mean that you don't need to use it because it does describe a feature of the game. It's the core feature, and that's what people would expect. So how do you respond to that? Well, I think that we have to keep in mind the context. Zabmondo had two games on the market that didn't use the would you rather trademark, and those games were a success according to Zabmondo. It didn't need to use the brand and the trademark then. In coming up with and using would you rather dot dot dot question mark in 2002, it considered over 130 other alternatives. Its book publisher considered yet other alternatives. There was no need. It came up with 130 some options that were equally applicable to what it wanted to do. On that record, there's no evidence that it needed to use would you rather dot dot dot question mark. My worry is one thing that the district court said that gave me some pause was that many other third parties have used the same mark to describe the same type of product and the same type of concept even before your client entered into the market. And therefore, given that considerable third party use of the mark would demonstrate that it really lacks trademark significance, that it instead is a concept. I would respond to that in two ways. First of all, that Your Honor is referring to the extent of use test. Right. We believe that the district court erred in its analysis of that test. The extent of use, the record before the district court was not one of extensive use by third parties. There were a few copyright registrations on the record, but the copyright registrations in and of themselves don't explain extent to use, don't provide context to the use. That test, as articulated by this court, is designed to ascertain the prevalence of a mark in the consumer's collective consciousness. What does a copyright registration tell us about that? What do a few inconsistent Google hits tell us about that? There was a paltry amount of so-called evidence that didn't speak to the extent of use or how the public perceives it. On the record below, there was insufficient evidence, and certainly not evidence on summary judgment, to find that there was this need and there was this prevalence of use by third parties. Counsel, Judge Gould has a question for you. Am I right that the record doesn't contain, say, a survey or surveys that would show the general views of the public about what that purported mark means? In the interest of disclosure, the defendants, Zimbando did a survey which we criticized, and the court did not rely on that survey in her finding. So there was not a survey submitted by FalseMedia. I see that my time is running out, and I do want to reserve a little bit of time. I want to jump to a second issue that is critical, and that is the measurement of secondary meaning. And that's where I think the record is replete with examples of the district court weighing evidence. A descriptive mark can be protected with a showing of secondary meaning. And here, FalseMedia put in evidence of radio spots, promotional efforts by itself and its agents, sales quantity and dollar figures that overshadow comparable sales in other cases in which this court has reversed summary judgments in favor of a defendant. And I would submit to the court that accounting for the evidence of actual confusion, which we briefed, the evidence of intent and the way that Zimbando approached its acquisition of this mark, in addition to all of the promotional efforts, these alone and in aggregate certainly created tribal issues that a jury could decide and would decide in FalseMedia's favor. I'd like to reserve my remaining time for rebuttal. Thank you. May it please the Court. I'm Greg Korn, appearing on behalf of Apelli Zimbando and Randall Horne. I want to start out on the descriptiveness issue. And as I see it, there's three basic arguments that FalseMedia makes. And the first is this issue of the presumption of validity. The way that it's presented by FalseMedia, it is as though there is some kind of thumb on the scale as the result of a registration, which is simply not the law. We've cited several cases in several circuits, as well as a Northern District of California case, which all very clearly hold that the presumption is simply a burden-shifting doctrine. It puts an initial onus on us to come forward with evidence of invalidity in the first instance. But then that presumption evaporates. It bursts. And it has no further relevance in the case. And on this issue, I... Well, let me talk to you about that a little bit. As I understand it, you're the alleged infringer, or your client. And you've moved for summary judgment. And the non-moving party has the federally registered mark. Now, the fact that they registered the mark without evidence of secondary meeting, isn't that evidence that the USPTO considered the mark suggestive and not descriptive? There's no question in the record, Your Honor, that the PTO found the mark suggestive. So then, if that's the case, how could a judge determine that the mark is descriptive in light of a due regard accorded to the position when they draw all inferences in favor of your opposition? A couple answers, Your Honor. It seems to me they have to weigh the evidence. I don't believe so. So a couple of responses. First, I want to bring the court's awareness to a Ninth Circuit case called TYTEC that was discussed by the parties, but not on this particular point. And the citation is 296 F. 3rd at 782 to 785. There's a very good discussion there by this circuit of the fact that it is simply a burden of production that is imposed on the defendant, and once it is pierced, it evaporates. It has no further relevance in the case. Now, as far as precisely Your Honor's question, I think maybe what you're getting at is why did the PTO get it wrong? Well, it seems to me that the only way the judge can really suggest the PTO got it wrong is to weigh the evidence, and that's not what they're allowed to do. I don't think so, Your Honor. I think the judge, as she did, can find that the mark is descriptive and not suggestive by applying the tests that this court dictates that she apply. I guess I'm wondering why there isn't at least a genuine issue of material fact, given that Falls Media provided evidence on the needs test, and Falls Media presented their expert witness on the extent of third-party use. Now, you may say that the evidence is weak and might not prevail at trial, but why isn't it enough to create a genuine issue? What would be the basis for saying that it did not? Well, first, the imagination test is dispositive, as this court held in self-realization. It's the primary criterion, and to be imaginative, a mark has to require some kind of mental leap or multistage reasoning, as Mr. Gajar described it. So you can imagine the application of that test. A consumer has a Falls Media book, and they read the book, and it is nothing more than questions that begin with the words, Would you rather, and they read over 200 questions, and when they turn to the cover of the book, there's the title, and the question is, does that consumer have to exercise some kind of mental leap or some multistage reasoning to understand the connection between the title and the book? You present no evidence on that, right? I mean, as I had mentioned, I had never heard of Would you rather as a game or otherwise, and so it would certainly take a leap for me. So isn't that a question of fact as to whether it's imaginative or not, that you should need to present some evidence on that point? Well, I think the evidence that we have, let me answer a couple ways. I think there are some marks that on their face are so unimaginative that no evidence is required, and I think the entrepreneur mark in this court's entrepreneur media case would be an example. Sometimes there are marks that are clearly not imaginative if we consider some evidence about public familiarity with the mark. I think the best examples would be this court's self-realization case and maybe the 555-1212.com case. I could see that maybe if I look at a product and see the mark self-realization, without any back story, without knowing anything else, I might not know whether it's imaginative. But if I understand that this is sort of a familiar term in the yoga industry, I guess you would call it, then I can tell that it's unimaginative. Or similarly, take 555-1212. What was the evidence that Would You Know, Would You Rather, excuse me, was familiar to the subset of people who might purchase these products? What evidence was produced? There were several pieces of evidence. First and the most minor piece of evidence would be the declaration of my client, Randall Horn. More importantly, Mr. Gujar, I think, was perhaps mistaken when he said that the only evidence in the record on the issue of third-party use was some copyright registrations. And unfortunately, that's simply absolutely false. In fact, what was in the record, and this court has, and if you'd like me to provide a side, I can't, is numerous actual books sold in commerce on websites like Amazon.com in the same exact place that their products sell. In addition to those numerous books, and I think it was somewhere in the range of six, seven, or eight books, there was another game called, by a company called Lagoon Games, called Would You Prefer? And that's in the briefing. And in addition, we, this is attached to my declaration, went out and just did a simple Google search, and you will come up with limitless websites that are devoted to this concept of would you rather questions. And lo and behold, not surprisingly, they all call it would you rather. All of this extensive third-party use shows two things. First, as Judge Smith mentioned, it shows that this is a mark that doesn't describe source. It's not a clever indicator of source. What it shows is this is a mark that everybody chooses to use because it's the most clear and obvious description of the product. I was thinking about this in preparation for the argument. Maybe a slight spin on this would be to turn and ask the court, okay, we've presented all this evidence, all of these books that use the same mark, another game, Zob Mondo's games, and then all of these websites. And the question I would ask is, is it surprising to anyone that they've chosen to call it would you rather? I mean, is it surprising that a book or website that consists of nothing more than questions that begin with the words would you rather is called would you rather? No, I don't think so. I don't think it's surprising. And to me, that's a demonstration that this isn't indicating a source. It's just indicating a concept. It's indicating a type of product. So all of the third-party use shows that there is an understanding among the consuming public that this is an indicator of a type of product and not the source of the product. Well, that sounds good. And you're really arguing the similarity between the imagination that's needed here. And I look at Japan Telecom, and I know what was said there. But I guess that still brings me back to the same problem. If, in fact, I've had the government agency, which is set to determine these things, and they say this is not a descriptive mark, and then I say, okay, I have to take all inferences of the evidence in this record and weigh them in favor of FM, and now I say one can, on summary judgment, give it to the person who is infringing, it seems to me I've weighed the evidence. How do I get around it? There are several Ninth Circuit cases. Name one. Self-realization, Japan Telecom affirming summary judgment on registered trademarks. And numerous district court cases, for whatever those are worth to the court. We cited the Snake Light case, which is in the Southern District of New York. We cited 555-1212.com, which is in the Northern District of California. We've also cited Second Circuit and Seventh Circuit cases, the Fifth Circuit American Heritage case. There are a number of cases where this court and many other courts throughout this country have found that, regrettably, the PCO got it wrong, and even on summary judgment. Mr. Korn, it's Judge Gould with a question for you. I understand that there's precedent from either the Supreme Court or our circuit that would say that the trademark registration alone, if that was all there was, that that wouldn't necessarily defeat a summary judgment. That there can be summary judgments in such cases. But can it be considered? Let's say a jury tries this. If we reverse the summary judgment, what would the jury instruction tell the jury they can do with the registration? Would it say you disregarded its burst and it's gone? Or would it say they could give it some weight if they want? Well, it's an interesting question. I think, no, to be honest, I don't think the proper instruction to the jury would be don't consider the registration. I think the proper instruction would be, at the outset, the registration puts the burden on Zabmondo to come forward with some evidence of invalidity, meaning descriptiveness and lack of secondary meaning. And if you find that Zabmondo has come forward with evidence, it's met that initial burden of production, then you are not to consider the registration. That, I believe, in all candor, would be the appropriate instruction. OK. That's consistent with the argument that you are making. And maybe that's correct. I'll weigh that further. Let me get some help from you on another question. We've got the needs test on the one hand and the imagination test on the other. And maybe there's some other tests. But in terms of if there were a jury instruction, what would it tell the jury they should do with these potentially conflicting tests? Well, I don't. In other words, like you said that the imagination test is predominant or you would argue it's controlling. But is that is there a law that says if the imagination test goes for one side but the needs test goes for the other, that you take the imagination test? No. Or is it like just a factor that, you know, they'd get some instruction? Yes, Your Honor. There is no case law that specifically that I'm aware of that specifically addresses what occurs if one factor goes one way and one factor goes the other way. It is true that this court in self-realization has held that the imagination test is the primary criterion. But why don't I do this? I actually, because I believe I failed to address the needs test or at least failed to address it well. I want to point out to this court the entrepreneur media case. And there's a really good passage in the entrepreneur media case where this court sort of reflects and recognizes you can always come up with something different. The exact words of this Ninth Circuit was the English language is rich in imagery. And so you could avoid the word entrepreneur. And the example the court said is you could call it a small business innovator illustrated. I mean, it's true. I'm not going to stand up here and deny that it's literally impossible for us to come up with a different mark. But that's not the test. I don't think that's a fair reading of the test as set forth in Bada, which is this circuit's micro-precision case. A more fair reading, I believe, is that we were not going to let a company monopolize common English words such that it would prevent its competitors from fairly competing by describing its goods. I think we passed that test with flying colors. We could change the name to any number of things, but nothing describes this product as easily, as clearly, and as decisively as would you rather. And I think all of the third-party use that we've demonstrated goes to show you just how important it is that we use this mark. There's all of these books, and there's websites, and there's games showing this notion of would you rather being in the consciousness. So they – False Media gives an example of one of their competitors who they pushed out of the market by making them use the mark would you prefer. Or maybe we can come up with some imaginative marks like lesser of two evils or something like that. The problem we face as a company that is trying to and is enormously succeeding in the market is that when somebody comes to the counter in Target or Walmart and sees products, they don't know what lesser of two evils are. They don't know what maybe between a rock and a hard place is. These are all really clever names, but consumers don't know what that is. But when they see would you rather, they know what that is. And in fact, so much so that the lower court cited and quoted from an email from one of the principals of False Media, David Gomberg. And I can't give you a page number, but I will tell you it's in her opinion, and it's also in our brief. And it's a marvelously telling email. I'm running out of time, so I'll just finish this one point. It was an email from David Gomberg, and he says, and this is a moment of candor. We're not yet in a lawsuit, so everybody's speaking frankly. And he's speaking to an associate and says, from my experience with impulse buys, and particularly would you rather products, people buy this product because they're familiar with the concept, not the source, because they're familiar with the concept. And he concludes his email by saying, when a consumer comes to a store and sees a $20 would you rather game next to a $30 would you rather game, they simply choose the cheaper product. To me, this is a marvelously pregnant and loaded statement that if you unpack it, you realize that what Mr. Gomberg has done is precisely describe the hallmark of a descriptive mark. When the consumer comes and sees these products, the mark would you rather is not telling them anything about the source of the product, simply telling them what the product is. It's a concept. And so much. Yes, Your Honor. And it tells so little about the source of the product that they'll readily just choose the cheaper of the two. Thank you, Your Honor. Thank you. I'll start by saying summary judgment in trademark cases is the exception and not the rule. I want to correct a few things that my colleague Mr. Korn mentioned. First, my representation to the court was not that. There were mere copyright registrations and nothing else. There were books. None of the books were competitive with or in the same genre of false media's books or of submodels' books. The extent of use test looks to see to what extent competitors in the field are using the same mark on similar products. There simply wasn't any of that evidence. As to the one game that Mr. Korn mentioned, that was an infringing game. False media, it was second in time. False media wrote to them and they acknowledged false media's right and they stopped selling the game. It's an infringement. Under the court's Levi-Strauss decision, that doesn't count against us in a secondary meaning analysis or in a distinctiveness analysis. I want to address the cases that Mr. Korn cited. Self-realization and Japan Telecom, based on my knowledge and my read, did not involve registered trademarks. Mr. Korn, I think, erroneously suggested that self-realization did. What's curious about self-realization is that in that case, the court actually reversed summary judgment as to the mark self-realization fellowship. Finding that the mere addition of the word fellowship to self-realization created a genuine issue of material fact as to the issue of descriptiveness for a jury to decide. Entrepreneur is a case relied heavily upon by Mr. Korn and his client. In that case, entrepreneur is a defined term in the dictionary. Would you rather it is not? There was evidence of use of hundreds and hundreds of websites, news articles, et cetera, of the term. What's curious about that case, that was a plaintiff's summary judgment. The plaintiff in that case won on summary judgment. The court reversed summary judgment as to the use by defendant of entrepreneur illustrated on a magazine. So it's really inapplicable here. I want to move to the USPT. You're actually out of time, so can you wrap up, please? I could. Thank you, Your Honor. This court's in Clixbilliard's caution that it's not the role of the district court at the summary judgment stage to decide which party has a more compelling argument. That's exactly what the court did on the issues of distinctiveness and on secondary meaning, which we unfortunately didn't get a lot of opportunity to talk about today, but which involved disputed evidence of promotion, of intent, of the effectiveness of the promotion. And on this record, the court should reverse and remain. Thank you, Your Honor. Okay. The case of Zabando Entertainment v. Falls Media is submitted, and we're adjourned for the day. Thank you both for your arguments. All rise for the decision to adjourn.
judges: Gould, Ikuta, Smith N. R.